UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
TERRI SIMMONS and P.E.,                           :
                         Plaintiffs,                     :
v.                                                :
                                       :      **OPINION AND ORDER**
MOUNT VERNON CITY SCHOOL DISTRICT;  :
PUTNAM/NORTHERN WESTCHESTER          :      19 CV 10388 (VB)
BOARD OF COOPERATIVE EDUCATIONAL     :
SERVICES; NICOLE MURPHY; and FELICIA :
GAON, Director of School Services,    :
                         Defendants.             :
------------------------------------------------------------------x

Briccetti, J.:

Plaintiffs Terri Simmons and her son "P.E." bring this action against defendants Mount

Vernon City School District (the "District"), Putnam/Northern Westchester Board of

Cooperative Educational Services ("PNW BOCES"), Nicole Murphy, and Felicia Gaon (together

with Murphy, the "individual defendants").  Plaintiffs allege violations of the Individuals with

Disabilities Education Act ("IDEA") giving rise to claims under (i) Section 504 of the

Rehabilitation Act of 1973, 29 U.S.C § 794, and Title II of the Americans with Disabilities Act

("ADA"), 42 U.S.C. § 12131 et seq.; (ii) 42 U.S.C. § 1983; and (iii) N.Y. Educ. Law §§ 3214,

4402, and 4404, and 8 N.Y.C.R.R. §§ 200 and 201 (the "New York State Education Laws").  In

addition, plaintiffs seek a declaratory judgment against the District that a settlement agreement

entered into between Simmons and the District constitutes an executory accord under N.Y. Gen.

Oblig. L. § 15-501(1).

Now pending is defendants' motion to dismiss the fourth amended complaint ("4AC") for

failure to state a claim pursuant to Rule 12(b)(6).  (Doc. #117).

For the reasons set forth below, the motion is GRANTED IN PART and DENIED IN

PART.

1

The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367(a).

**BACKGROUND**

For the purpose of ruling on the motion to dismiss, the Court accepts as true all well-pleaded allegations in the fourth amended complaint and draws all reasonable inferences in plaintiffs' favor, as summarized below.  The Court presumes the parties' familiarity with the facts and procedural history of this case and recites only those facts relevant to the pending motion.

Plaintiffs' claims arise from defendants' alleged failure to provide P.E., a student with a disability as defined by the IDEA, with a free appropriate public education ("FAPE") in violation of federal and state law.

I.    IDEA Statutory Framework

The IDEA requires that states receiving federal funds provide "all children with disabilities" a "[FAPE] that emphasizes special education and related services."  20 U.S.C. § 1400(d)(1)(A).  Local schools must provide each disabled student with an individualized education program ("IEP") specifying the student's educational needs and the specially designed instruction and related services to be employed to meet those needs.  20 U.S.C. § 1414(d)(1)(A); 34 C.F.R. § 300.320(a).

A school district cannot discontinue a disabled child's educational services or change their placement without first complying with certain due process protections.  20 U.S.C. § 1415(k).  Also, a school "may remove a child with a disability who violates a code of student conduct from their current placement to an appropriate interim alternative educational setting, another setting, or suspension, for not more than 10 school days."  20 U.S.C. §1415(k)(1)(B). Prior to such a removal, the parent must be provided with written notice detailing the alleged

misconduct and an explanation of the student's right to an impartial due process hearing.  20 U.S.C. § 1415(c)(2)(B).  Once the parent requests a due process hearing, the district must provide written notice of the date, time, and place of the hearing, and must do so within thirty days of the request.  Id.  During the resolution of a due process complaint or hearing, a child must remain in their current placement unless both the school and the parent agree to a change or unless specific disciplinary exceptions apply.  20 U.S.C. § 1415(j); 34 C.F.R. § 300.518.

Relatedly, if a student conduct violation causes the school to choose to change the student's educational placement, within ten school days of that decision, the district must convene a manifestation determination review ("MDR") meeting.  20 U.S.C. § 1415(k)(1)(E).  An MDR meeting is used to determine whether the student's conduct was caused by, or had a substantial relationship to, the student's disability, or was the direct result of the district's failure to implement the student's IEP.  Id.  If the student's conduct is determined to be a manifestation of his disability, the student must be returned to his prior placement, "unless the parent and the local educational agency agree to a change of placement as part of the modification of the behavioral intervention plan." 20 U.S.C. § 1415(k)(1)(F)(iii).  However, the school may "remove [the] student to an interim alternative educational setting for not more than 45 school days without regard to whether the behavior is determined to be a manifestation of the child's disability, in cases where a child . . . knowingly possesses or uses illegal drugs . . . while at school[.]"  20 U.S.C. § 1415(k)(1)(G)(ii).

II.    Factual Background

A.    P.E.'s Suspension from Fox Meadow

P.E. was diagnosed with mental and physical disabilities at birth.  In 2015, P.E. began attending Fox Meadow High School ("Fox Meadow"), a specialized school for students with

additional needs, operated by PNW BOCES.  At Fox Meadow, P.E. received an IEP, which included various special education services.  According to the fourth amended complaint, P.E. thrived at Fox Meadow.  Pursuant to his IEP, P.E. was set to continue to receive those accommodations through the 2016–2017 school year, his junior year.

On November 9, 2016, P.E. was suspended from Fox Meadow allegedly for five days for alleged marijuana possession.  Simmons alleges her repeated attempts to schedule a meeting with the school or to obtain written documentation to gain clarity on the circumstances of the suspension were unsuccessful.  On November 14, 2016, Simmons received the first formal notice of an additional five-day suspension.  The letter stated that Fox Meadow's principal, defendant Murphy, had referred P.E.'s suspension for a superintendent's hearing, but allegedly did not provide the required notice of the hearing's date, time, and location, or the right to be represented by counsel at the hearing.  Simmons also alleges the letter did not include any information regarding a legally required MDR meeting.  On November 18, 2016, defendant Gaon, the District's Director of Student Services, informed Simmons that the superintendent's hearing had been scheduled for November 22, 2016, but that Simmons had requested an adjournment until she secured an attorney.  This allegedly came as a surprise to Simmons.

Despite P.E.'s serving the entirety of his ten-day suspension, Murphy did not permit him to return to school until after the superintendent's hearing.  However, the District allegedly made no effort to reschedule the hearing.  P.E. remained out of school through the end of 2016 and without access to any of his mandated special education services.  Simmons alleges the District did not follow up with her to reschedule the superintendent's hearing and did not respond to her requests for support or clarification.

On January 3, 2017, Simmons filed a due process complaint with the PNW BOCES

Director of Special Education.  In the due process complaint, Simmons requested an impartial hearing and asked that P.E. receive the services in his IEP.  On January 9, 2017, the District informed Simmons that an impartial hearing was scheduled for January 13, 2017.  On January 10, 2017, P.E. was permanently expelled from Fox Meadow allegedly without any notice or opportunity to be heard.

On January 17, 2017, Gaon informed the impartial hearing officer ("IHO") assigned to P.E.'s case that the District had conducted an MDR hearing regarding the November 9, 2016, incident and P.E.'s expulsion.  Simmons alleges she was not aware of the MDR hearing and had not been allowed to participate.  On February 3, 2017, the IHO issued an Interim Order finding among other things that (i) the District had agreed to adjourn the previously scheduled superintendent's hearing in recognition of Simmons's efforts to secure legal representation; (ii) Simmons and P.E. continued to deny the underlying allegations; and (iii) P.E. had not received any educational services since approximately November 9, 2016.  Based on these findings, the IHO ordered the District to hold a superintendent's hearing and an MDR meeting by February 10, 2017, unless the parties reached a settlement beforehand.

B.    The Settlement Agreement

On March 13, 2017, Simmons and the District executed a settlement agreement ("Settlement Agreement"), under which the District agreed to (i) develop a new IEP for P.E.; (ii) search for an out-of-district placement for P.E.; (iii) include Simmons in the placement process; (iv) provide P.E. twice-weekly counseling services; (v) provide P.E. two hours of home instruction per school day during the evaluation and placement search; and (vi) provide 25 hours of compensatory tutoring.  In exchange, Simmons released her claims against the District.  Simmons alleges P.E. was not provided with any of the agreed-upon services and that she was

excluded from the development of his new IEP and the decision to place him at new high schools.  P.E. did not receive any educational services until March 29, 2017, when he received a placement for the remainder of the 2016-2017 school year.  The placement split his time between Nellie A. Thornton High School ("Thornton") and Mount Vernon High School ("Mount Vernon"), which he had to travel between each day.  Plaintiffs allege neither school was able to fully provide P.E., with the services he needed, and the District also did not provide P.E.'s IEP to the Thornton or Mount Vernon administrators.

According to the fourth amended complaint, during the summer of 2017, the District developed a new IEP for P.E. without Simmons's participation. The new IEP unilaterally removed P.E.'s autism designation without any notice or opportunity to be heard.  Plaintiffs allege P.E. was denied a FAPE from November 9, 2016, until February 2022, when he turned 22.

C.      The District's Treatment of Other Students with Disabilities

Plaintiffs allege the District's treatment of P.E. was not an isolated incident.  They claim the District persistently failed to meet IDEA performance standards.  For instance, plaintiffs compare the District's graduation metrics which show non-disabled students graduating from District schools at a far higher rate than their disabled peers.  Likewise, county-wide figures for students with disabilities show that disabled students in the District graduated at a lower rate than disabled students in non-District schools.  In addition, in 2018, the New York State Education Department ("NYSED") determined the District "needs intervention" for IDEA compliance. (4AC ¶ 66).

Plaintiffs also point to a similar lawsuit filed by eight students with disabilities against the District in 2013, M.H. v. Mount Vernon City Sch. Dist., 13-cv-3596 (VB) (S.D.N.Y.).  As part of the eventual settlement of that case, the District agreed to conduct an audit of its special

education programs.  The District's then-superintendent was quoted in a news article stating that the District, and specifically Gaon, were working to "correct deficiencies in its special education processes and programs."  (4AC ¶ 63).

III.    Procedural History

Proceeding pro se, Simmons commenced this action on November 8, 2019, by filing a complaint (the "Original Complaint").  This Court dismissed the Original Complaint on September 9, 2020, because a parent cannot bring claims on behalf of their child without counsel.  On March 2, 2021, with the assistance of counsel, Simmons filed an amended complaint asserting claims on behalf of herself and P.E..  On January 31, 2022, the Court dismissed the amended complaint, because the attorney whose signature appeared on the amended complaint did not file an appearance in the case and disclaimed any future representation of Simmons, and also because Simmons failed to exhaust her administrative remedies under the IDEA. (Doc. #52 at 5–7, 12).

On April 15, 2022, Simmons filed a second amended complaint, bringing claims only on her own behalf.  The Court dismissed the second amended complaint on February 8, 2023, finding that Simmons's Section 1983, ADA, and Section 504 claims were subject to the IDEA's exhaustion requirement, but that she had failed to exhaust her administrative remedies and not plausibly alleged exhaustion would have been futile or should otherwise be excused.  (Doc. #83).

Simmons appealed that decision.  In 2024, the Second Circuit vacated in part and reversed in part and remanded the case, holding that Simmons's Section 1983, ADA, and Section 504 claims were not subject to IDEA exhaustion in light of the Supreme Court's decision in Luna Perez v. Sturgis Public Schools, 598 U.S. 142 (2023), a case that had been decided while the appeal was pending.  See Simmons v. Murphy, 2024 WL 2837625 (2d Cir. June 5, 2024).

The panel did not review the sufficiency of the second amended complaint's factual allegations because Simmons was pro se and had not had an opportunity to amend.

On remand, this Court appointed pro bono counsel. Through counsel, Simmons and P.E. filed a third amended complaint and then a fourth amended complaint.

**LEGAL STANDARDS**

I.      Standard of Review

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under "the two-pronged approach" articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).[1] First, a plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss. Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010). Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility." Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 556).

---

[1]      Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

8

II.    Statute of Limitations and Relation Back

"[A] statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint." Page v. Ellenhoff Grossman & Schole LLP, 2024 WL 4195137, at *1 (2d Cir. Sept. 16, 2024) (summary order).

In some circumstances, an amended complaint filed outside the statute of limitations may be deemed timely if it relates back to an earlier pleading filed before the limitations period expired. DaCosta v. City of New York, 296 F. Supp. 3d 569, 584 (E.D.N.Y. 2017). An amended complaint adding new or different parties relates back to the prior, timely-filed complaint only if the requirements of Federal Rule of Civil Procedure 15(c) are met.

Under Rule 15(c), "for an amendment which adds a new plaintiff to relate back to the original complaint, the original plaintiff must demonstrate: [i] the new plaintiff's claims arise out of the same transaction or occurrence advanced in the original pleading; [ii] the defendant received adequate notice of the new plaintiff's claims so as not to be prejudiced in maintaining a defense on the merits; and [iii] the defendant knew or should have known that, but for a mistake concerning the new plaintiff's identity, the action would have been brought on that party's behalf." Levy v. U.S. Gen. Acct. Off., 1998 WL 193191, at *5 (S.D.N.Y. Apr. 22, 1998), aff'd, 175 F.3d 254 (2d Cir. 1999).

**DISCUSSION**

Defendants move to dismiss all of P.E.'s claims as untimely because P.E. was not joined as a plaintiff until May 29, 2025, upon the filing of the third amended complaint after the statute of limitations had run. In addition, defendants contend plaintiffs fail to allege facts sufficient to plausibly state a claim for relief regarding plaintiffs' Section 504 and ADA claims, as well as the Section 1983 claims against the District and the individual defendants. With respect to the

Section 1983 claims, defendants contend (i) Simmons does not have standing to bring claims for a violation of the IDEA, (ii) even if she did have standing, the Settlement Agreement bars Simmons from bringing claims against the District which accrued prior to March 2017 Settlement Agreement, and (iii) plaintiffs fail to allege facts sufficient to maintain claims against the District and the individual defendants. Defendants also move to dismiss plaintiffs' claims under the New York State Education Laws as untimely and because the laws do not provide for a private right of action.

I.      Claims Under Section 504 and the ADA

A.      P.E.'s Claims Are Not Time Barred

Defendants argue that P.E.'s claims under Section 504 and the ADA are time-barred. The Court disagrees.

An amended complaint filed after the statute of limitations has run may be deemed timely if it relates back to an earlier pleading filed before the limitations period expired. DaCosta v. City of New York, 296 F. Supp. 3d 569, 584 (E.D.N.Y. 2017). In evaluating relation back under Rule 15(c), "courts . . . inquire into whether the opposing party has been put on notice regarding the claim or defense raised by the amended pleading." Charlot v. Ecolab, Inc., 97 F. Supp. 3d 40, 71 (E.D.N.Y. 2014). "The rationale . . . is that a party who has been notified of litigation concerning a particular occurrence has been given all the notice that statutes of limitations were intended to provide." United States v. Baylor Univ. Med. Ctr., 469 F.3d 263, 270 (2d Cir. 2006). As long as a defendant is fully apprised of a claim arising from specified conduct and has prepared to defend the action, the defendant's ability to protect itself will not be prejudicially affected if a new plaintiff is added, and the defendant should not be permitted to invoke a limitations defense. 6A Wright & Miller's Federal Practice & Procedure § 1501 (3d. ed. 1998).

10

P.E.'s claims are substantially identical to the claims brought in the Original Complaint, filed on November 8, 2019, and arise out of the same incidents in 2016 and 2017.  Defendants moved to dismiss the Original Complaint on the basis that Simmons, a non-attorney pro se litigant, could not pursue claims on behalf of her son.  (Doc. #13 at 4) (emphasis added).  Defendants do not dispute that Simmons's claims are timely and relate back to the Original Complaint.  (Docs. ##118 at 8–9; 124 at 9).  Defendants themselves acknowledged that "throughout the [Original Complaint] the term [p]laintiff is used to describe [Simmons] and her son interchangeably."  (Doc. #13 at 4).  It is clear that defendants were on notice of P.E.'s claims in this litigation.   They cannot now claim surprise or suggest that the omission of P.E. as a named party was anything but a result of a mistake.

Courts interpreting Rule 15(c)(1)(C)'s mistake provision do not strictly require that a plaintiff be mistaken as to his or her own identity.  Rather, other forms of mistake are also correctable when relation back is necessary "to prevent parties against whom claims are made from taking unjust advantage of otherwise inconsequential pleading errors." Advanced Magnetics, Inc. v. Bayfront Partners, Inc., 106 F.3d 11, 19 (2d Cir. 1997).  See also Beach v. Citigroup Alternative Invs. LLC, 2014 WL 904650, at *19 (S.D.N.Y. Mar. 7, 2014) ("In this Circuit, courts have rejected the 'mistake' requirement when adding new named plaintiffs in a class action and focus on whether the new plaintiff's claims were reasonably foreseeable and whether their addition would prejudice the defendants.").  Simmons was a pro se plaintiff who made an inconsequential pleading error, by failing to name P.E. as a party, despite her repeated attempts to bring his claims.

Moreover, the "substance of the allegations concerning defendant's conduct toward [P.E.] are fully set forth in the [O]riginal [C]omplaint . . . .  The only result of the amendment is that

11

[P.E.] is added as a party." Neufeld v. Neufeld, 910 F. Supp. 977, 985–86 (S.D.N.Y. 1996). Defendants' ability to protect themselves will not be prejudiced if P.E.'s claims are added. Accordingly, the fourth amended complaint relates back to the Original Complaint and P.E.'s claims under Section 504 and the ADA are not time-barred.

B.      Failure to State a Claim Under Section 504 or the ADA

Defendants next argue plaintiffs fail to state a valid claim under the ADA or Section 504 against the District and PNW BOCES. The Court agrees with respect to PNW BOCES, but disagrees with respect to plaintiffs' allegations against the District.

As an initial matter, "[b]ecause Section 504 . . . and the ADA impose identical requirements," courts "consider these claims in tandem." Rodriguez v. City of New York, 197 F.3d 611, 618 (2d Cir. 1999).

Section 504 of the Rehabilitation Act, in pertinent part, provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). To state a claim under Section 504 and the ADA, a plaintiff must allege: "(1) he is an individual with a disability; (2) he is otherwise qualified for benefits under a federally funded program; and (3) he has been denied those benefits because of his disability." S.W. ex rel. J.W. v. Warren, 528 F. Supp. 2d 282, 289 (S.D.N.Y. 2007). "In the special education context, courts have held that a plaintiff must demonstrate more than an incorrect evaluation or substantively faulty IEP to establish liability; a plaintiff must show that defendants acted with bad faith or gross misjudgment." R.B. ex rel. L.B. v. Bd. of Educ. of City of N.Y., 99 F. Supp. 2d 411, 419 (S.D.N.Y. 2000). "Intentional discrimination may be inferred when a [defendant] act[s] with at

12

least deliberate indifference to the strong likelihood that a violation of federally protected rights will result from the implementation of the challenged policy or custom." S.W. ex rel. J.W. v. Warren, 528 F. Supp. 2d at 291.  Prolonged deprivation of a FAPE may constitute evidence of deliberate indifference to violation of federal rights.  C.Q. v. N.Y.C. Dep't of Educ., 2024 WL 4979293, at *8 (S.D.N.Y. Dec. 3, 2024).

Here, there is no dispute P.E. is a "person with disabilities" who is "otherwise qualified to participate in" obtaining a FAPE, and no dispute the District and PNW BOCES receive federal funds.  S.W. ex rel. J.W. v. Warren, 528 F. Supp. at 289.  Likewise, there is no dispute that the District's actions resulted in P.E.'s inability to access a FAPE for most of the 2016–2017 school year.  Thus, the key inquiry here is whether plaintiffs' allegations give rise to a plausible inference that defendants acted with "bad faith or gross misjudgment" in depriving P.E. of a FAPE.  With respect to the District, the answer is yes.

Plaintiffs allege the District deprived P.E. of a FAPE for a prolonged period by keeping him out of school for 140 days without any educational services; placing him at two schools, neither of which provided him with the services mandated by IEP; and failing to provide the new schools with his IEP.  Accepting all of plaintiffs' allegations as true, as the Court must at this stage, such a prolonged and persistent deprivation of a FAPE may constitute evidence of deliberate indifference to violation of federal rights.  See, e.g., C.Q. v. N.Y.C. Dep't of Educ., 2024 WL 4979293, at *9; K.S. ex rel. D.S. v. City of N.Y., 2023 WL 6608739, at *17 n.10 (S.D.N.Y. Oct. 10, 2023) (defendants' "persistent failure" to provide plaintiff with a FAPE sufficient to survive a motion to dismiss a Section 504 claim); R.B. ex rel. L.B. v. Bd. of Educ. of N. Y., 99 F. Supp. 2d 411, 419 (S.D.N.Y. 2000) (motion to dismiss Section 504 claim denied when plaintiff alleged defendants failed to take any action to implement plaintiff's IEP for four

months).  These alleged repeated instances of the District's failure to provide a FAPE to P.E. for such a prolonged period of time support an inference of deliberate indifference by the District, and thus a violation of both the ADA and Section 504.  C.Q. v. N.Y.C. Dep't of Educ., 2024 WL 4979293, at *9.

However, although plaintiffs plausibly allege P.E. was deprived of a FAPE, they fail to plead any facts which allege that PNW BOCES participated in the alleged violation of P.E.'s rights under Section 504 and the ADA.

Accordingly, plaintiffs' Section 504 and ADA claim against the District may proceed, but the Section 504 and ADA claim against PNW BOCES must be dismissed.  Although plaintiffs' claim against the District may proceed, the Court notes any compensatory damages for emotional harm pursuant to this claim are not available.  See A.S. v. Mamaroneck Union Free Sch. Dist., 2024 WL 308211, at *6 n.6 (S.D.N.Y. Jan. 26, 2024) (citing Cummings v. Premier Rehab Keller, P.L.L.C., 596 U.S. 212, 230 (2022)) ("[E]motional distress damages are not recoverable under Section 504, and . . . thus likely bars such damages under the ADA).[2]

II.     Section 1983 Claims[3]

The denial of a "free appropriate public education" has been held to constitute a constitutional deprivation actionable under Section 1983.  See Quackenbush v. Johnson City Sch. Dist., 716 F.2d 141, 148 (2d Cir.1983).

---

[2]      Defendants argue that plaintiffs are not permitted to seek compensation for emotional injuries.  (Doc. #118 at 8).  Plaintiffs do not address this argument in their opposition and take no position on the availability of emotional distress damages for P.E.'s Section 504 and ADA claims.  (Doc. #121).

[3]      The Section 1983 claims are brought against the District, Murphy, and Gaon.  They are not brought against PNW BOCES.

A.    Statute of Limitations

Defendants argue that P.E.'s claims under Section 1983 are time barred.  For the same reasons discussed above for the Section 504 and ADA claims, the Court disagrees.

B.    Standing for Simmons

Defendants move to dismiss Simmons's Section 1983 claim on the basis that she does not have standing to bring a claim on her own behalf.

The Court disagrees.

According to defendants, "it is well settled . . . that a parent lacks standing under section 1983 to bring this claim on her own behalf." (Doc. #118 at 9).  This is incorrect.  In fact, the Supreme Court has held that parents have independent enforceable rights under the IDEA.  Winkelman v. Parma City School Dist., 550 U. S. 516, 530–31 (2007).  These rights encompass the entitlement to a FAPE for the parent's child.  Id. at 533.  As plaintiffs correctly point out, the cases cited by defendants "are distinguishable because those plaintiffs' alleged violations of someone else's rights, rather than their own independent rights." (Doc. #121 at 20).  Simmons thus has standing under Section 1983 to bring a claim against the district for a violation of her own independent rights under the IDEA.  B.C. v. Mt. Vernon Sch. Dist., 660 F. App'x 93, 95 (2d Cir. 2016).

Notwithstanding that Simmons has standing to bring claims against the District, she lacks standing to recover for derivative emotional or collateral injuries under Section 1983.  A cause of action may not be asserted pursuant to Section 1983 for emotional distress allegedly suffered by family members of the plaintiff.  Collins v. West Hartford Police Dept., 324 F. App'x. 137, 139 (2d Cir.2009).

15

C.    Settlement Agreement Releases and Declaratory Judgment

Defendants further argue that Simmons cannot bring Section 1983 claims against the District premised on a violation of the IDEA for any events that transpired before March 2017 because of the releases in the Settlement Agreement.[4]  However, plaintiffs argue those releases are no longer applicable because plaintiffs allege the District materially breached  the Settlement Agreement by failing to provide P.E. with a FAPE.

In addition, defendants move to dismiss plaintiffs' fourth cause of action, which seeks a declaratory judgment finding the Settlement Agreement is an executory accord, thereby permitting Simmons to sue on the underlying claims.  The Court finds that the agreement is not an executory accord but declines to bar Simmons from bringing her claims given the alleged breach of the Settlement Agreement.

Under the Settlement Agreement the District agreed to (i) develop a new IEP for P.E.; (ii) search for an out-of-district placement for P.E.; (iii) include Simmons in the placement process; (iv) provide P.E. twice-weekly counseling services; (v) provide P.E. two hours of home instruction per school day during the evaluation and placement search; and (vi) provide 25 hours of compensatory tutoring.  (4AC ¶ 106.)  In exchange, Simmons agreed to release any claims against the District.  Id.  In the fourth amended complaint, plaintiffs allege the District failed to comply with the Settlement Agreement by not providing P.E. any counseling, home instruction, or compensatory services.  (Id. ¶ 107).  Plaintiffs also allege the District excluded Simmons from

---

[4]    Defendants appear to claim that the Settlement Agreement precludes only Simmons's Section 1983 claims against the District and not the individual liability claims against Gaon and Murphy.  Also defendants do not argue that the Settlement Agreement precludes any of P.E.'s claims.  (Docs. ##118 at 10, 124 at 4).

the development of P.E.'s new IEP and the decision to place him at new high schools.  (Id. ¶¶ 107–08).

### 1.    Law of the Case

Defendants rely on this Court's decisions on the motions to dismiss the first and second amended complaints to argue that "any claims that [] Simmons seeks to assert against Mount Vernon CSD based upon events that transpired before the March 2017 Settlement Agreement was signed are precluded." (MTD at 4).  Prior to the fourth amended complaint, Simmons had not pleaded any facts related to the District's purported breach of the Settlement Agreement. The Settlement Agreement was raised by defendants in their motions to dismiss the first and second amended complaints.

Under the law of the case doctrine, a court adheres "to its own decision at an earlier stage of the litigation unless there are cogent or compelling reasons not to, such as an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." Sanders v. Sullivan, 900 F.2d 601 (2d Cir.1990).  The law of the case doctrine also does not control when an amended complaint alleges materially different and more detailed claims than the initial complaint.  Bellezza v. Holland, 2011 WL 2848141, at *3 (S.D.N.Y. July 12, 2011).

Given the new factual allegations in the fourth amended complaint, the Court will consider plaintiffs' arguments as to the District's alleged breach of the Settlement Agreement. Kregler v. City of New York, 821 F. Supp. 2d 651, 658 (S.D.N.Y. 2011) (finding law of the case doctrine did not apply because the plaintiff made new factual allegations).

17

2.    Nature of the Settlement Agreement

Plaintiffs argue the Settlement Agreement should be treated as an executory accord under N.Y. Gen. Oblig. L. § 15-501.  An executory accord "is a contract that provides for discharge of prior existing obligations upon satisfaction of the newly bargained-for performance."  C3 Media & Mktg. Grp., LLC v. FirstGate Internet, Inc., 419 F. Supp. 2d 419, 433 (S.D.N.Y. 2005).  This is in contrast to a substitute agreement.  Id. at 434.  "Whereas an executory accord extinguishes a claimant's prior claims upon performance of the accord, a substitute agreement extinguishes a claimant's prior claims upon execution of the agreement."  Frank Felix Assocs. v. Austin Drugs, Inc., 111 F.3d 284, 287 n.1 (2d Cir. 1997).  "When a material breach of a substitute agreement occurs, the non-breaching party may sue on the underlying obligations only if the court orders rescission."  C3 Media & Mktg. Grp., LLC v. FirstGate Internet, Inc., 419 F. Supp. 2d at 434.  By contrast, when a party materially breaches an executory accord, the non-breaching party may elect to sue on the pre-existing obligations without first obtaining rescission of the accord.  N.Y. Gen. Oblig. Law § 15–501(3).

Plaintiffs contend the Settlement Agreement was an executory accord because Simmons released claims against the District only in exchange for the District's stipulated performance and so she should be able to sue on the underlying claims.  (Doc. #121 at 14).

The parties' intent at the time of contracting dictates the proper characterization of the Agreement at issue, which is ordinarily a question of fact.  C3 Media & Mktg. Grp., LLC v. Firstgate Internet, Inc., 419 F. Supp. 2d at 434.  "However, where the parties have manifested their intent on the face of the document, the court can make this determination as a matter of law based on the documents before the court."  Id.  Plaintiffs attach the Settlement Agreement to the fourth amended complaint as an exhibit.  (See Doc. #114–14).

18

As a threshold matter, the Court has not found—and plaintiffs have not cited—any cases in which courts in this circuit have treated IDEA settlement agreements as executory accords. Moreover, "the settlement agreement offers no language indicating that Plaintiff's claims would remain live pending Defendant's performance of the settlement." L.E.K. Consulting LLC v. Amicus Cap. Partners, LLC, 2020 WL 5535191, at *1 (S.D.N.Y. Sept. 15, 2020); C3 Media & Mktg. Grp., LLC v. Firstgate Internet, Inc., 419 F. Supp. 2d at 434 ("An executory accord . . . may be evidenced by language preserving existing claims until such performance is tendered."). Here, the Settlement Agreement simply states:

> The parties agree that this Agreement resolves all of the disputes between the parties regarding the issues raised in the Parent's January 9, 2017 demand for an impartial hearing, and the Student's educational program for the 2016-2017 school year.  The Parent waives any right to assert any claim, action, suit, etc. relative to the allegations in the hearing request or actions contained in this agreement.

(Doc. #114–14 at 2).

Accordingly, the Court finds the Settlement Agreement is not an executory accord. Plaintiffs' fourth cause of action seeking a declaratory judgment must therefore be dismissed.[5]

### 3.      Material Breach

Plaintiffs argue that even if the Settlement Agreement is not an executory accord, Simmons should still be permitted to bring her Section 1983 claims given the District's material breach of the agreement's terms.  (Doc. #121 at 16).

The Court agrees.

---

[5]      Defendants also move to dismiss the fourth cause of action seeking a declaratory judgment on (i) statute of limitations grounds and (ii) for failure to file a timely notice of claim. (Doc. #118 at 23–24).  Because the Court dismisses this claim on alternative grounds, it need not address defendants' other arguments for dismissal.

A breach is material when it relates to "the root of the agreement between the parties and is so substantial that it defeats the object of the parties in making the contract." Wechsler v. Hunt Health Sys., Ltd., 330 F. Supp. 2d 383, 414 (S.D.N.Y. 2004). When determining whether a breach was material, courts consider "the absolute and relative magnitude of default, its effect on the contract's purpose, willfulness, and degree to which injured party has benefited under contract." Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc., 500 F.3d 171, 186 (2d Cir. 2007)).

Plaintiffs contend the alleged breach was material because defendants' failures to provide P.E. with the required educational services were substantial relative to the reasons Simmons signed the Agreement. Plaintiffs argue that Simmons's purpose in entering into the Settlement Agreement "was to remedy the harm caused by P.E.'s prolonged exclusion from school, resolve P.E.'s disciplinary charges, and address issues raised in the Due Process Complaint." (Doc. #121 at 15). Plaintiffs plausibly allege defendants' failure to provide interim educational services to P.E., failure to place P.E. in a school which could provide him with the services required by his IEP, and failure to include Simmons in placement decisions, defeated Simmons's purpose in entering the Settlement Agreement. As such, plaintiffs sufficiently allege defendants' breach of the Settlement Agreement was material. See Wechsler v. Hunt Health Sys., Ltd., 330 F. Supp. 2d at 414.

Defendants argue, without citing any legal authority, that, at a minimum, Simmons is precluded from asserting claims based upon the disciplinary process involving P.E. which led to the Agreement as plaintiffs do not and cannot allege the District failed to adhere to that part of the agreement. (Doc. #124 at 4–5).

20

Given the plausible allegations that defendants materially breached the Settlement Agreement, defendants may not at this stage rely on the Settlement Agreement to prevent Simmons from bringing any of her claims. Onex Food Servs.,Inc. v. Grieser, 1996 WL 103975, at *5 (S.D.N.Y. Mar. 11, 1996) ("[O]ne who breaches a contract may not seek to enforce other provisions of that contract to his or her benefit."). The Court declines to parse the Settlement Agreement to permit certain claims and preclude others given the alleged material breach.

D.    Monell Claim

Defendants argue plaintiffs fail to state a Section 1983 claim for municipal liability against the District because the allegations are insufficient to "plausibly suggest that [the District] itself caused the violation of their rights." (Doc. #118 at 12).

The Court disagrees.

A school district may be liable for deprivation of a student's rights pursuant to Section 1983 "when execution of a [district's] policy or custom . . . , inflicts the injury." Monell v. N.Y.C. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978). "Municipal entities, including school districts, are persons within the meaning of [Section] 1983 and therefore subject to suit under that provision." Nagle v. Marron, 663 F.3d 100, 116 (2d Cir. 2011). "A school district's liability under Monell may be premised on any of three theories (1) that a district employee was acting pursuant to an expressly adopted official policy; (2) that a district employee was acting pursuant to a longstanding practice or custom; or (3) that a district employee was acting as a final policymaker." Hurdle v. Bd. of Educ. of City of N.Y., 113 F. App'x 423, 424–25 (2d Cir. 2004).

Plaintiffs purport to state Monell liability against the District under two theories: (i) the District had a longstanding practice or custom of violating the rights of students with disabilities; and (ii) it had an official policy of violating the rights of students with disabilities, as

21

demonstrated through an alleged failure to adequately train and/or supervise employees to such an extent that it amounted to deliberate indifference.  (Doc. #121 at 17).

### 1.      Practice or Custom

To demonstrate a practice or custom pursuant to Monell, plaintiffs need not show the existence of a formally approved practice so long as "the relevant practice is so widespread as to have the force of law."  Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown, 520 U.S. 397, 404 (1997).  In addition, plaintiffs must prove the practice is "so permanent and well settled as to constitute a custom or usage with the force of law."  City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988).  For Monell purposes, a custom may involve either affirmative conduct or failure to act.  Reynolds v. Giuliani, 506 F.3d 183, 192 (2d Cir. 2007) ("Monell's policy or custom requirement is satisfied where a local government is faced with a pattern of misconduct and does nothing, compelling the conclusion that the local government has acquiesced in or tacitly authorized its subordinates' unlawful actions.").  "Monell liability does not derive from individual incidents of wrongdoing by non-policymakers."  Treadwell v. Cnty. of Putnam, 2016 WL 1268279, at *4 (S.D.N.Y. Mar. 30, 2016).  At this early stage in the litigation, "plaintiffs need not prove that they would succeed on their claim of Monell liability, but must merely show that they may be able to prove a set of facts in support of such claim which would entitle them to relief."  Scaggs v. N.Y. Dep't of Educ., 2007 WL 1456221, at * 14 (E.D.N.Y. May 16, 2007).

Plaintiffs allege the District had a practice of (i) failing to comply with federal laws and its own policies intended to protect students with disabilities, including by punishing students for conduct attributable to their disability, and denying students and parents their procedural rights (4AC ¶¶ 5, 8, 10, 60, 81–87, 92, 95, 98, 109-110, 112-113, 115, 120, 122); (ii) excluding students with disabilities from school without due process (id. ¶¶ 6,60); (iii) depriving students

22

with disabilities of mandated educational services while excluded from school (id. ¶¶ 6,60,89); (iv) expelling students with disabilities and transferring them to new schools without adequate process or interim services (id. ¶¶ 6,60, 98 107–08); (v) consistently failing to meet state targets for students with disabilities, including targets for graduation rates, drop-out rates, and participation and performance on state assessments, developing transition plans; and post-secondary outcomes (id. ¶ 55); (vi) failing to monitor and correct deficiencies in IDEA compliance (id. ¶¶ 65–66), and (vii) failing to adequately implement students' IEPs and settlement agreements (id. ¶¶ 12, 60, 113).  (Doc. #121 at 17–19)

In support, plaintiffs rely on NYSED records for the 2011–2012 through 2016–2017 school years, finding the District repeatedly (i) failed to meet the state's targeted annual four-year graduation rate for students with disabilities; (ii) failed to reduce dropout rates for students with disabilities; (iii) failed to meet state targets for students with disabilities participation in state assessments and for their performance on state assessments; (iv) failed to develop IEPs with appropriate transition plans; and (v) failed to reach state targets for post-secondary outcomes for students with disabilities.  (4AC ¶ 55).  Plaintiffs also point to allegations made in a prior lawsuit against the District, M.H. v. Mount Vernon City Sch. Dist., 13-cv-3596 (VB) (S.D.N.Y.), ("M.H."), which they argue are substantially similar to the incidents in question.  M.H. settled and as part of the settlement the District agreed in 2018 to undertake a district-wide audit of special education programming and to implement a two-year remedial action plan to improve special education programs.  (4AC ¶ 62).  Following the settlement, the superintendent publicly stated that the District was working to correct deficiencies in its special education processes and programs.  (Id. ¶ 63 ).

23

The Court will not rely on certain allegations in the M.H. complaint, such as the allegations related to suspensions and the scheduling of MDRs because the case resulted in a settlement without the adjudication of liability.  See Tieman v. City of Newburgh, 2015 WL 1379652, at *15 (S.D.N.Y. Mar. 26, 2015) (declining to consider the existence of nine other lawsuits with similar allegations because none resulted in an adjudication of liability).  However, the district-wide audit and superintendent's public statements related to the deficiencies in the special education process in the District are relevant facts.[6]

The Court finds plaintiffs' allegations that the District had a longstanding practice of failing to comply with state and federal special education standards are sufficient to allege a practice or custom at this stage.  For example, the NYSED metrics state that only 30% of students with IEPs had appropriate transition plans in their IEPs, which is analogous to the District's alleged failure to provide P.E. with an appropriate transition plan.  (4AC ¶ 55).  Moreover, the superintendent's public statements that there were deficiencies in the special education process which the district was working to correct supports this inference.

However, plaintiffs do not plausibly allege the District had a history of excluding students with disabilities from school without due process, or of depriving students with disabilities of mandated educational services while excluded from school, or of expelling students with disabilities from mandated educational services.  For these allegations, plaintiffs cite only the facts alleged in M.H., which standing on their own are insufficient to allege a broader practice or custom.  See Tieman v. City of Newburgh, 2015 WL 1379652, at *15.  There

---

[6]    Defendants argue that the claims in the M.H. lawsuit predate the underlying events here, but the relevant audit and statements happened in 2018, which followed the 2016 and 2017 events at issue here.

is no support for these claims under the NYSED statistics, nor any other evidence that plaintiffs are able to offer.

Accordingly, plaintiffs sufficiently plead a Monell claim against the District on the basis of a longstanding practice of not complying with federal laws and its own policies intended to protect students with disabilities, consistently failing to meet state targets for students with disabilities, not developing transition plans, failing to monitor and correct deficiencies in IDEA compliance, and failing adequately to implement students' IEPs and settlement agreements. Plaintiffs do not sufficiently plead a Monell claim against the District on the basis of a longstanding practice of excluding students with disabilities from school without due process, depriving students with disabilities of mandated educational services while excluded from school, and expelling students with disabilities and transferring them to new schools without adequate process or interim services.

### 2.    Failure to Train or Supervise

Alternatively, plaintiffs argue they sufficiently alleged the "District failed to adequately train and/or supervise employees, resulting in violations of the rights of students with disabilities, including P.E." (Doc. #121 at 19).  A theory of liability under Monell premised on a failure to train is akin to arguing a district employee acted pursuant to an expressly adopted official policy of the District.  T.J. ex rel. B.W. v. Bd. of Educ. of Mt. Vernon City Sch. Dist., 2019 WL 13170168, at *10 (S.D.N.Y. Sept. 30, 2019).  Defendants argue the fourth amended complaint does not plead any facts regarding training or how that training is deficient.

The Court agrees with plaintiffs.

To demonstrate a municipality failed to provide adequate training, a plaintiff must allege (i) "[the] policymaker knows to a moral certainty that her employees will confront a given

situation," (ii) "the situation either presents the employee with a difficult choice of the sort that

training or supervision will make less difficult or that there is a history of employees

mishandling the situation," and (iii) "the wrong choice by the city employee will frequently

cause the deprivation of a citizen's constitutional rights." Jenkins v. City of New York, 478 F.3d

76, 94 (2d Cir. 2007).  "Failure to train subordinate municipal employees will trigger municipal

liability only where the failure to train amounts to deliberate indifference to the rights of

members of the public with whom the employees will interact."  Green v. City of New York, 465

F.3d 65, 80 (2d Cir.2006).  "It is unlikely that a plaintiff would have information about the city's

training programs or about the cause of the misconduct at the pleading stage."  Amnesty America

v. Town of West Hartford, 361 F.3d 113, 130 n. 10 (2d Cir. 2004).  Thus, a plaintiff "need only

plead that the city's failure to train caused the constitutional violation," in order to plead

municipal liability.  Id.

Here, plaintiffs argue they sufficiently alleged facts to support the inference that "(1) the

District knew its employees would confront the situation of providing services to—and

navigating disciplinary issues involving—students with disabilities; (2) there is a history of

employees mishandling the provision of services to students with disabilities and complying with

the IDEA—including in the disciplinary context; and (3) employees' failure to comply with the

IDEA frequently deprived students with disabilities a FAPE."  (Doc. #121 at 20).

These allegations support the same inferences as in the practice or custom analysis.

Plaintiffs plausibly allege the District knew its employees would confront the situation of

providing services to and navigating disciplinary issues involving students with disabilities, but

they do not plausibly allege facts related to the mishandling of the IEP in the disciplinary

26

context.  All of the allegations in the disciplinary context are either isolated to P.E. or related to unsubstantiated allegations in M.H..

Consequently, the Court comes to the same conclusion on the failure to supervise theory as on the practice or custom theory.  Plaintiffs plausibly allege that the District failed to adequately train and/or supervise employees, resulting in violations of the rights of students with disabilities, including P.E., but not as it relates to the disciplinary context.

E.      Section 1983 Claims Against the Individual Defendants

Defendants argue the claims against Murphy and Gaon should be dismissed because they were not personally involved in P.E.'s inability to access a FAPE.

To state a claim under Section 1983 against a defendant in her individual capacity, a plaintiff must allege "personal involvement" in the deprivation of federal rights.  Platt v. Southampton, 391 F. App'x 62, 65 (2d Cir. 2010).  The Second Circuit has held that "there is no special rule for supervisory liability."  Tangreti v. Bachmann, 983 F.3d 609, 618 (2d Cir. 2020).  To establish a Section 1983 violation, a plaintiff must plead that each defendant was personally involved in the alleged constitutional violation.  Id.  Thus, a defendant cannot be held liable under Section 1983 "by reason of [her] supervision of others who committed the violation."  Id. at 619.

1.      Claims Against Murphy

Plaintiffs allege Murphy violated plaintiffs' rights by (i) suspending P.E. for conduct attributable to his disability without due process or a statutorily required MDR meeting and (ii) failing to provide P.E.'s required services during his subsequent suspension.

Defendants argue the fourth amended complaint fails to identify how plaintiffs' rights were violated by P.E.'s suspension.  Specifically, defendants contend P.E. was not denied due

27

process or an MDR meeting.  Instead, defendants claim the MDR meeting did not occur because the District and Simmons entered into the Settlement Agreement—which resulted in a withdrawal of disciplinary charges against P.E.—before the MDR meeting or a superintendent's hearing could take place.  Moreover, defendants argue when a student's alleged conduct involves the possession of illegal drugs, an MDR meeting is not required to suspend him.

This argument misreads the relevant statute.  If a student is disciplined for knowingly possessing or using illegal drugs, school personnel "may remove a student to an interim educational setting for not more than 45 school days without regard to whether the behavior is determined to be a manifestation of the child's disability."  20 U.S.C. § 1415(k)(1)(G).  The statute does not relieve the District of its responsibility to conduct an MDR meeting.  Instead, it provides a longer amount of time where a student can be moved to an interim educational setting.  Here, P.E. was allegedly removed from school for more than 45 days.  He did not receive an MDR meeting or a superintendent's hearing.  The IHO even concluded an MDR meeting would have been appropriate if the case had not settled.  Plaintiffs thus plead sufficient details at this stage to show that Murphy was directly involved in P.E.'s suspension without the required due process.  (4AC ¶¶ 76, 84–89, 95).

In addition, plaintiffs allege Murphy was aware P.E. was not provided with educational services during his suspension.  Specifically, plaintiffs allege that Murphy suspended P.E. and that Simmons requested in writing from Murphy that P.E. continue to receive his special education services while the parties worked to schedule additional hearings.  (4AC ¶¶ 82, 84–89).  Plaintiffs' allegations that Murphy was on notice of P.E.'s need to receive educational services during his suspension and the fact that P.E. did not receive those services are sufficient

28

at this stage to plead that Murphy was personally involved in the failure to provide P.E. with educational services during his suspension

Accordingly, plaintiffs sufficiently plead Section 1983 claims against Murphy in her individual capacity.

### 2. Claims Against Gaon

Plaintiffs allege Gaon violated their rights by (i) failing to provide proper notice of the superintendent's hearing; (ii) failing to provide due process prior to P.E.'s expulsion; (iii) excluding Simmons from the MDR meeting or failing to hold one, excluding Simmons from P.E.'s IEP development and school placement discussions; (iv) failing to provide interim services, including required services in his IEP; and (v) failing to provide services mandated in P.E.'s IEP after placing him at new schools. (Doc. #121 at 23). Defendants move to dismiss plaintiffs' claims against Gaon, arguing the fourth amended complaint does not allege facts sufficient to plausibly suggest Gaon was aware of those omissions and failed to take corrective action or otherwise acted with deliberate indifference or gross negligence.[7]

The Court divides the list of allegations against Gaon into two categories: those related to disciplinary hearings against P.E. (failing to provide proper notice of the superintendent's hearing; failing to provide due process prior to P.E.'s expulsion; excluding Simmons from the MDR meeting or failing to hold one) ("disciplinary allegations"), and those related to his IEP following his suspension (excluding Simmons from P.E.'s IEP development and school placement discussions; failing to provide interim services, including required services in his IEP;

---

[7]    As discussed above, there is no special rule for supervisory liability. See Tangreti v. Bachmann, 983 F.3d at 618. The Court will only consider whether plaintiffs adequately allege that Gaon through her own actions violated plaintiffs' rights. Id.

failing to provide services mandated in P.E.'s IEP after placing him at new schools) ("IEP allegations").

Defendants repeat for Gaon the same arguments made as to Murphy regarding the disciplinary allegations. Again, the Court is not persuaded at this stage that plaintiffs have not sufficiently alleged a violation of plaintiffs' constitutional rights because an MDR meeting was not required in this situation and the charges were withdrawn. Furthermore, plaintiffs sufficiently allege Gaon directly participated in the deprivation of plaintiffs' rights. Gaon was involved in communicating with Simmons regarding the scheduling of the superintendent's hearing. (4AC ¶ 100). Despite Simmons's alleged objections to the short notice and lack of time to find legal representation, Gaon responded that the hearing would move forward. (Id. ¶ 101). Plaintiffs also sufficiently allege that Gaon was involved in the MDR meeting which may or may not have occurred, and if it did occur, it happened without Simmons's involvement as was her right under federal law. (Id. ¶¶ 102-03). Plaintiffs thus sufficiently allege Gaon directly participated in the disciplinary allegations.

In contrast, plaintiffs do not sufficiently allege Gaon directly participated in the IEP allegations. The fourth amended complaint does not allege facts sufficient to suggest Gaon was aware of P.E.'s IEP development and school placement discussion, his interim services, or his services after placing him at his new schools. Gaon's name is not mentioned in any of the paragraphs describing those alleged actions, nor do plaintiffs plead any details relevant to Gaon's job title, which would permit an inference of deliberate indifference.

Accordingly, defendants' motion to dismiss plaintiffs' claims against Gaon in her individual capacity is granted with respect to the IEP allegations but denied with respect to the disciplinary allegations.

30

III.    New York State Education Law Claims

Finally, defendants move to the dismiss plaintiffs' claims against the District under the New York State Education Laws.  Defendants argue these claims are time barred and that the relevant statutes and regulations do not provide for a private right of action.  The Court will not address the merits of the arguments because it deems the claims abandoned due to plaintiffs' failure to respond.

A court may deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed.  Arma v. Buyseasons, Inc., 591 F. Supp. 2d 637, 642–43 (S.D.N.Y. 2008) (collecting cases); Youmans v. Schriro, 2013 WL 6284422, at *5 (S.D.N.Y. Dec. 3, 2013) ("A plaintiff's failure to respond to contentions raised in a motion to dismiss claims constitutes an abandonment of those claims.").  When the abandoning party is represented by counsel and filed a partial opposition to the dispositive motion, dismissal is appropriate.  Fantozzi v. City of New York, 343 F.R.D. 19, 32 (S.D.N.Y. 2022).  Plaintiffs are represented by counsel and do not address any of defendants' arguments related to the state law claims in their opposition.

Accordingly, plaintiffs' claims under the New York State Education Laws are dismissed.

31

## CONCLUSION

The motion to dismiss is GRANTED IN PART and DENIED IN PART.

The following claims are dismissed:  the Section 504 and ADA claims against PNW BOCES, the claims brought pursuant to the New York State Education Laws, and the declaratory judgment claim.

The following claims shall proceed:  the Section 504 and ADA claims against the District; the Section 1983 claims against the District on the basis of a longstanding practice of not complying with federal laws and its own policies intended to protect students with disabilities, consistently failing to meet state targets for students with disabilities, not developing transition plans, failing to monitor and correct deficiencies in IDEA compliance, and failing adequately to implement students' IEPs and settlement agreements; the Section 1983 claims against Murphy; and the Section 1983 claims against Gaon with respect to the IEP allegations, but not with respect to the disciplinary allegations.

By March 6, 2026, the District, Murphy, and Gaon shall file an answer to the fourth amended complaint.

By separate Order, the Court will schedule an initial conference.

The Clerk is instructed to terminate PNW BOCES as a defendant and terminate the motion.  (Doc. #117).

Dated: February 13, 2026
       White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge

32